Michael D. Braun (SBN 167416)
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone:  (213) 401-4100
Facsimile:   (213) 401-0311
Email:  mdb@kuzykclassactions.com

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| **STACY GRADNEY AND SHARON TOLL on behalf of themselves and all others similarly situated,** | **CASE NO.:** |
| **Plaintiffs,** | **CLASS ACTION** |
| **v.** | **COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF** |
| **POLAR BEVERAGES** | |
| **Defendant.** | |

Plaintiffs Stacy Gradney and Sharon Toll ("Plaintiffs"), individually and on behalf of themselves and all others similarly situated, bring this class action against Defendant Polar Beverages ("Polar" or "Defendant"), and on the basis of personal knowledge, information and belief, and the investigation of counsel, allege as follows:

## INTRODUCTION

1.     This is a proposed class action on behalf of a nationwide, California and New York class (collectively, "Class") of consumers seeking redress for Defendant's deceptive practices associated with the advertising, labeling and sale of its Polar 100% Natural Seltzers.

2.     Defendant Polar manufactures, markets, advertises, and sells a line of 100% Natural Seltzers in a pack of 8 individual cans ("Seltzers" or "Products"). The Seltzers are sold in a variety of flavors. Other than the flavor, the designation on the packaging is identical.



COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

1
2
3
4
5
6
7
8



9
10
11
12
13
14
15
16
17



18
19
20
21
22
23
24
25
26
27
28



COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

1

2

3.    The front of each package prominently states that the Product is "100 % Natural." The identical representation is made on each side panel.

3

4

5

6

7

8

9

10

11



12

13

14

4.    Although the front of the package is absolutely unambiguous with respect to its claim of being "100% Natural," the back of package serves only to reinforce the "natural" representation and its overall clean label image claiming, "we craft our seltzer with NO sugar, sweeteners, sodium or

15

16

17

18

19

20



21

22

23

24

25    caffeine."

26

27

28

5.      Indeed, the Product contains only two ingredients: carbonated water and natural flavors.



6.      Despite being characterized as a "100% Natural," however, the Product contains synthetic ingredients rendering the claim false, misleading and in violation of the law.

7.      Plaintiffs conducted radiocarbon (C-14) testing on multiple samples of Polar Seltzer to quantify the total organic carbon present in the sample.  The results were reported as "% Biobased Carbon" whereby 100% Biobased Carbon indicates that a material is entirely sourced from plants or animal by-products (*i.e.,* "100% Natural"). Any result less than 100% Biobased Carbon indicates the presence of synthetics (*i.e.*, petrochemicals) in the Product.

8.      The results were unequivocal. Although Polar Springs claims to be "100% Natural," the test shows that it is only 87 % - 91%  Biobased Carbon. In other words, Polar seltzer contains 9-13% synthetics, rendering the claim "100% Natural" false, misleading and in violation of the law.

9.      Plaintiff conducted further analytics using GC Mass Spectrometry in an effort to identify likely synthetics. The results show the presences of ocimene quintoxide, a known synthetic, and a series of terpineols (*e.g.*, 4-Terpineol, α-Terpineol, 1-Terpineol) that are often used in flavorings in their synthetic forms.  Regardless of origins, attributions or identities, however, any

1  synthetic in a Product that claims to be "100% Natural" renders the statement
2  false.

3      10.    Throughout the applicable Class Periods, Defendant has falsely
4  represented the true nature of its seltzers, and as a result of this false and
5  misleading labeling, was able to sell these Products to hundreds of thousands
6  of unsuspecting consumers throughout California, New York and the United
7  States.

8      11.    Plaintiffs allege Defendant's conduct is in breach of warranty,
9  violates California's Business and Professions Code § 17200, *et. seq.,*
10  California's Business & Professions Code § l7500, *et. seq.,* California Civil
11  Code § 1750, *et seq.*, N.Y. Gen. Bus U. Law § 349 et seq.,  N.Y. Gen. Bus.
12  Law § 350 et seq., and is otherwise grounds for restitution on the basis of
13  quasi-contract/unjust enrichment.

14  ## JURISDICTION AND VENUE

15      12.    Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2).
16  Diversity jurisdiction exists as Plaintiff Gradney is a resident of Hayward,
17  California, Plaintiff Toll is a resident of New York, New York, and Defendant
18  Polar Beverages is a Massachusetts corporation with its principal place of
19  business in Worcester, Massachusetts. The amount in controversy exceeds
20  $5,000,000 for the Plaintiffs and members of the Class collectively, exclusive
21  of interest and costs, by virtue of the combined purchase prices paid by
22  Plaintiffs and members of the putative Class, and the profits reaped by
23  Defendant from its transactions with Plaintiffs and the Class, as a direct and
24  proximate result of the wrongful conduct alleged herein, and by virtue of the
25  injunctive and equitable relief sought.

26      13.    Venue is proper within this judicial district pursuant to 28 U.S.C.
27  § 1391 because a substantial portion of the underlying transactions and events
28  complained of occurred and affected persons and entities located in this

judicial district, and Defendant has received substantial compensation from such transactions and business activity in this judicial district.

## **PARTIES**

14.     Plaintiff Stacy Gradney is a resident of Hayward, California.

15.     Ms. Gradney purchased Polar Seltzers Products in a number of flavors such as lime, cranberry lime, black cherry, and ruby red grapefruit among others. Her purchases were made throughout 2023-2024 from stores such as Walmart, Walgreens, Food Max, and Grocery Outlet located in various locations in or near San Leandro, San Lorenzo and Hayward, California.

16.     Ms. Gradney believed the representations on the Products' packaging -- that she was consuming Beverages that were 100% Natural and otherwise devoid of synthetic ingredients.

17.     Ms. Gradney believed that Defendant lawfully marketed and sold the Products.

18.     Ms. Gradney relied on Defendant's labeling and was misled thereby.

19.     Ms. Gradney would not have purchased the Products or would have purchased the Products on different terms had she known the truth about their contents.

20.     Ms. Gradney was injured in fact and lost money as a result of Defendant's improper conduct.

21.     If Ms. Gradney has occasion to believe that Defendant's marketing and labeling is truthful, non-misleading, and lawful, she would purchase Polar Seltzers in the future.

22.     Plaintiff Sharon Toll is a resident of New York, New York.

23.     Ms. Toll purchased a Polar Seltzers Products in a variety of flavors such as Blackberry, Orange Vanilla, Lime, and Lemon. She purchased

Polar Seltzer Products approximately twice a month during at least 2023-2024 from Fairway markets at or near her home in New York.

24.    Ms. Toll believed the representations on the Products' packaging -- that she was consuming Beverages that were 100% Natural and otherwise devoid of synthetic ingredients.

25.    Ms. Toll believed that Defendant lawfully marketed and sold the Products.

26.    Ms. Toll relied on Defendant's labeling and was misled thereby.

27.    Ms. Toll would not have purchased the Products or would have purchased the Products on different terms had he known the truth about their contents.

28.    Ms. Toll was injured in fact and lost money as a result of Defendant's improper conduct.

29.    If Ms. Toll has occasion to believe that Defendant's marketing and labeling is truthful, non-misleading, and lawful, she would purchase Polar Seltzers in the future.

30.    Defendant Polar Beverages manufactures, markets and sells the "100% Natural" Seltzer at issue in this litigation. The Seltzers are sold across a variety of retail segments including supermarkets, convenience stores and mass merchants in New York, California and across the Country. Polar Beverages is a Massachusetts corporation that maintains its principal place of business in Worcester Massachusetts.

## GENERAL ALLEGATIONS

**A.     THE MARKET FOR SELTZER**

31.     The global sparkling water market size was valued at $42.62 billion in 2024. The market is projected to grow from $47.75 billion in 2025 to $108.35 billion by 2032. It has witnessed significant growth in recent years, driven by various factors such as consumers' increasing health consciousness and preferences for healthier beverages. The product's increasing popularity has led to a highly competitive marketplace with numerous brands vying for consumer attention NS market share." [1]

32.     Leading the segment are canned natural/mineral waters which have become popular due to their convenience and portability. "It's the perfect beverage for our era, aligning with the modern ethos of wellness, natural consumption, and sober curiosity." [2]

33.     Polar operates in this highly competitive space against several well-established and well-funded brands. Given the paucity of ingredients in seltzers, it is a challenge  for marketplace participants to distinguish themselves.

---

[1] Sparkling Water Market Size, Share & Industry Analysis, By Type (Natural/Mineral and Caffeinated), By Packaging (Glass Bottles, Cans, and Plastic Bottles), By Distribution Channel (Hypermarket/Supermarket, Convenience Store, Online Channel, and Others), and Regional Forecast, 2025-2032, Fortune Business Insights, February 10, 2025. Available at www.fortunebusinessinsights.com/sparkling-water-market-107878 (last visited 2-24-25)

[2] Sutton, R., America's Sparkling Water Obsession, Bevi May 16, 2024. Available at https://bevi.co/blog/americas-sparkling-water-obsession/ (last visited 2-24-25).

1

**B.    Consumer Demand For Clean Label & Natural Products**

2

34.    The clean label movement has been called "the largest shift in

3

American food habits since World War II."[3] The term encompasses many

4

things but is most often associated with foods that are natural with no artificial

5

ingredients.[4]

6

35.    By representing the Product is "100% Natural," Defendant seeks

7

to capitalize on consumer preference for clean label products.

8

36.    In a survey undertaken by L.E.K, around 1600 consumers were

9

asked which claims were the most important to them when buying food and

10

drink products. Results indicated the most popular claim to be "no artificial

11

ingredients."[5]

12

13

14

15

16

17

18

19

20

21

22

[3] *Clean Labels, Public Relations or Public Health*, Center For Science in the Public Interest

23

(2017), available https://www.cspinet.org/sites/default/files/2022-03/Clean%20Label%20report.pdf (last visited July 10, 2024).

24

[4] *Clean label trend is evolving - consumers still willing to pay a price premium*, Valio, May

25

29, 2023. Available at https://www.valio.com/food-solutions-for-companies/articles/clean-label-trend-is-evolving-and-consumers-willing-to-pay-a-price-premium/ (last visited July

26

10, 2024).

27

[5] L.E.K. Consulting, *How the Clean-Label Megatrend Is Changing the Food Ingredients

28

Landscape*, Vol XXI, Issue 74, November 18, 2019. Available at
https://www.lek.com/insights/ei/clean-label-food-ingredients (last visited July 10, 2024).



Figure 2
Percentage of US consumers purchasing 'frequently or always' based on food claim (2018)

Note: Question: How frequently has your household purchased food with the following attributes or claims over the past 12 months when they were available?
Source: L.E.K. Consumer Survey and analysis

37.    It is axiomatic that a reasonable consumer would understand the phrase "100% Natural" on a Product's label to convey that the Product was devoid of artificial ingredients.

38.    This understanding is consistent with FDA which considers 'natural' to mean nothing artificial or synthetic is included in, or has been added to, the product that would not normally be expected to be there (56 FR 60421 at 60466).

> We have a longstanding policy for the use of the term "natural" on the labels of human food. We previously considered establishing a definition for the term "natural" when used in food labeling. In the preamble of a proposed rule we published in the **Federal Register** (56 FR 60421, November 27, 1991), we stated that the word "natural" is often used to convey that a food is composed only of substances that are not manmade and is, therefore, somehow more wholesome. We also said that we have not attempted to restrict use of the term "natural" except for added color, synthetic substances, and flavors under § 101.22 (21 CFR 101.22) (56 FR 60421 at 60466). **Further, we said that we have considered**

**"natural" to mean that nothing artificial or synthetic (including colors regardless of source) is included in, or has been added to, the product that would not normally be expected to be there** (56 FR 60421 at 60466)(emphasis added).[6]

39.     Clean label is defined as natural, containing only real ingredients, and is synthetic-free and free from artificial ingredients. 78% of consumers found clean label appealing once given the definition.[7] "When global consumers were asked to consider natural food and drink, 74% said groceries being 100% natural was important/very important. Consumers were also asked if they believe a grocery product can be 100% natural, to which two-thirds said yes." When consumers were asked to consider what natural means to them when it comes to food and drink, the top answer, 65% of consumers, said these were products that were free from synthetic ingredients….." *Id.*

40.     In a study related to consumer expectations regarding natural claims, researchers found that "consumers expect natural-claimed food to ….. be free from [] artificial ingredients…. Researchers similarly found that "…the natural claim increases purchase intention, mediated via brand trust and product attitude. However, when consumers learn that their expectations may be disconfirmed, their brand- and product-related attitudes decrease, which in turn leads to reduced purchase intentions. **These findings imply that food**

---

[6] Federal Register, Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments, November 12, 2015. Available at https://www.federalregister.gov/documents/2015/11/12/2015-28779/use-of-the-term-natural-in-the-labeling-of-human-food-products-request-for-information-and-comments. Last visited March 2, 2024.

[7] The Importance of Clean Label in 2023, March 16, 2023, FMCG GURUS, Available at https://fmcggurus.com/blog/fmcg-gurus-the-importance-of-clean-label-in-2023/. Last visited March 2, 2024.

**marketers can profit from the natural claim**, **but that there is a large potential for irresponsible food marketing and consumer deception**, which can result in negative expectation disconfirmation" (emphasis added). [8]

## C.    NATURAL FLAVORS

41.    Over the last decade, "Natural Flavors" have become ubiquitous ingredients in food and beverage formulations. According to the Environmental Working Group, which rates more than 80,000 foods on their degree of nutrition, ingredient and processing concerns, "Natural Flavor" is the fourth most common ingredient on food labels with only salt, water and sugar mentioned more frequently.[9]

42.    The federal Food Drug & Cosmetic Act ("FDCA") defines "natural flavor" as the "essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional." 21 C.F.R. §101.22(a)(3).

43.    In elemental terms, a natural flavor is anything that can be extracted from an animal or plant source. It is called "natural" because the

---

[8] Schirmacher, H, et al , That's not natural! Consumer response to disconfirmed expectations about 'natural' food, Appetite, Volume 180, 2023. Available at www.sciencedirect.com/science/article/pii/S0195666322003610. Last visited March 2, 2025.

[9] *Synthetic ingredients in Natural Flavors and Natural Flavors in Artificial Flavors*, Environmental Working Group, available at https://www.ewg.org/foodscores/content/natural-vs-artificial-flavors/. Last visited March 2, 2025.

original source of the flavor additive is not man-made.[10] Unfortunately, despite their name, natural flavors are complex, highly processed, amalgams of chemicals, carrier solvents, and preservatives.[11] Despite originating from a single natural source, the finalized flavor can contain as many as 250 chemically identified constituents, some of which are artificial and synthetic.[12] Moreover, these additional chemicals can make up 80 to 90 percent of the flavor.[13]

44.    Indeed, despite its name, ingredients that qualify as a "natural flavor" often have constituent components which are artificial or synthetic and may not qualify as "natural" ingredients. See, *Lam v. General Mills, Inc*., 859 F. Supp. 2d 1097, 1102 (holding that a product with no natural ingredients can

---

[10]  *Attention, Allergy Sufferers: Beware of Natural Flavors*, Food Safety News, December 2, 2015, available at https://www.foodsafetynews.com/2015/12/attention-allergy-sufferers-beware-of-natural-flavors/. Last visited March 2, 2025.

[11] *What are Natural Flavors?*, Food Revolution Network, available at https://foodrevolution.org/blog/natural-flavors/. Last visited March 2, 2025.

[12] *Is There Really Anything Natural About Natural Flavors?,* Suffolk University Journal of Health and Biomedical Law, April 4, 2019 available at https://sites.suffolk.edu/jhbl/2019/04/04/is-there-really-anything-natural-about-natural-flavors/. Last visited March 2, 2025.

[13]  *Synthetic ingredients in Natural Flavors and Natural Flavors in Artificial flavors*, EWG, available at https://www.ewg.org/foodscores/content/natural-vs-artificial-flavors/#:~:text=Federal%20Food%20and%20Drug%20Administration,juice%2C%20vegetable%20or%20vegetable%20juice%2C.  (These flavor mixtures often include amyl acetate, amyl butyrate, amyl valerate, ethyl butyrate, various aliphatic acid ester, ethyl acetate, ethyl valerate, ethyl isovalerate, ethyl pelargonate, vanillin, lemon essential oil, citral, citronellal, rose absolute, geraninol, orange essential oil, geranium essential oil, aldehyde $C_{10}$, ethyl heptanoate, acetaldehyde, aldehydes $C_{14}$ and $C_{16}$, styralyl acetate, dimethyl benzyl carbinyl acetate, benzyl formate, phenyl ethyl isobutyrate, cinnamyl isovalerate, anise essential oil, esters of colophony and benzaldehyde and may contain terpenyl isovalerate, isopropyl isovalerate, citronellyl isovalerate, geranyl isovalerate, benzyl isovalerate, cinnamyl formate, isopropyl valerate, butyl valerate, methyl allyl butyrate and potentially the synthetic ingredients cyclohexyl acetate, allyl butyrate, allyl cyclohexylvalerate, allyl isovalerate and cyclohexyl butyrate). Last visited March 2, 2025.

still qualify as "naturally flavored"). Indeed, many of the ingredients compatible with FDA's definition of "natural flavors" are artificial or highly processed, despite being derived from natural ingredients. Consequently, something that is a "natural flavor" may still contain synthetic or artificial ingredients thereby rendering untrue a voluntary claim that a Product is "100% Natural."

45.    Unfortunately for the consuming public, manufacturers are not required to list the sub-ingredients that constitute these flavors – a fact which results in the ability of manufacturers to obfuscate dozens of synthetic chemicals from disclosure.

46.    "On an ingredient label, "natural flavor" can be a sort of black box, enclosing dozens of components, including flavor chemicals, flavor modifiers, and solvents, none of which have to be individually disclosed. Many companies will use additives like propylene glycol when they can disguise them under the benign-sounding catchall "natural flavors"—even if they would reject them as individually listed ingredients." [14]

47.    Ultimately, seltzer manufacturers have a choice on how to flavor their beverages. While some will choose real ingredients in their product formulations, others will choose a variety of lab synthesized flavorings. Accordingly, while is possible to synthesize a "natural flavor" that is ultimately devoid of synthetics, it is equally possible that the end result is one replete with synthetic ingredients. Accordingly, those that choose to use "natural flavoring" in their Products must be diligent about the sub ingredients making up such flavorings, especially if they are going to make a voluntary affirmative representation that their product is "100% Natural."

---

[14] *Clean label's dirty little secret*, The Counter, February 1, 2018, available at https://thecounter.org/clean-label-dirty-little-secret. Last visited March 2, 2025.

48.     Reasonable consumers would not expect "natural flavors" to be an ingredient in a beverage  labeled "100% Natural" unless they were truly "natural" and devoid of synthetics. And while a "natural flavor" can be manufactured so as to be ultimately devoid of synthetics, and potentially supportive of a claim of "100% Natural, this is not the case here.

49.     "The marketing industry is based on the premise that labels matter—that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source…. [C]onsumers rely on the accuracy of those representations in making their buying decisions."[15]

50.     While this axiomatic proposition holds true with respect to all consumer goods, it is even more pertinent when it comes to consumer goods that are directly related to a consumer's health and wellness, and even more consequential when, as is the case here, consumers possess neither the scientific knowledge, nor the independent ability to verify the contents of a beverage prior to its purchase, but instead are reliant entirely on the honesty and integrity of the manufacturers and sellers of the product.

51.     Here, Defendant has leveraged the "100% Natural" Claim in order to increase its appeal to consumers and to bolster the sale of its Product. By making this claim when its Seltzers contained synthetic ingredients, Defendant has misled and deceived consumers in violation of the laws pled herein.

52.     As a result of Defendant's unlawful and deceptive conduct, Plaintiffs and members of the Class have been harmed.

---

[15] *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 328 (2011).

**D.**    **Plaintiffs' Analytical Testing**

53.    Plaintiffs' claims are not based on mere information and belief about natural flavors in general, but rather real evidence derived from testing of Polar Seltzers.

54.    Plaintiffs conducted radiocarbon (C-14) testing on multiple samples of Polar Seltzer to quantify the total organic carbon present in the samples.  The results were reported as "% Biobased Carbon" whereby 100% Biobased Carbon indicates that a material is entirely sourced from plants or animal by-products (*i.e.,* 100% Natural). Any result less than 100% Biobased Carbon indicates the presence of synthetics (i.e., petrochemicals) in the samples.

55.    The results were unequivocal. Although Polar Springs claims to be "100% Natural," the test shows that it is only 87 % - 91%  Biobased Carbon. In other words, Polar Seltzer is comprised of 9-13% fossil carbons, confirming the presence of synthetic carbon in the Product and rendering the claim "100% Natural" false, misleading and in violation of the law.

56.    Since there are only two ingredients listed on the Product label, the near definitive source of the synthetic carbon is from the flavoring. As detailed above, beverage flavoring may contain many individual components and carrier(s), any number of which could have been prepared industrially.

57.    Plaintiff conducted further analytics using GC Mass Spectrometry in an effort to identify the likely synthetics. The results show the presences of ocimene quintoxide, a known synthetic, and a series of terpineols (*e.g.*, 4-Terpineol, α-Terpineol, 1-Terpineol) that are often used in flavorings in their synthetic forms.  Regardless of origins, attributions or identities, however, any synthetic in a Product that claims to be "100% Natural" renders such a statement false, misleading, deceptive and in violation of the law.

## NO ADEQUATE REMEDY AT LAW

58.     Plaintiffs and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

59.     Broader Statutes of Limitations. The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations for damages claims under the CLRA.

60.     Broader Scope of Conduct. The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. The UCL creates a cause of action for violations of other laws (*e.g.*, Sherman Law), which does not require, among other things, that a reasonable consumer would have been deceived in order to establish a violation. Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (*e.g.*, the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

61.     Injunctive Relief to Cease Misconduct and Dispel Misperception. Injunctive relief is appropriate on behalf of Plaintiffs and members of the Class because Defendant continues to misrepresent the Products with the challenged representations. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm).

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

62.     Further, injunctive relief, in the form of affirmative disclosures are necessary to dispel the public misperception about the Product that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures include, but are not limited to, publicly disseminated statements that the Product's challenged representations are not true and provide accurate information about the Product's true nature; and/or requiring prominent qualifications and/or disclaimers on the Product's front label concerning the Product's true nature.

63.     An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages).

64.     Procedural Posture—Incomplete Discovery & Pre-Certification. Lastly, this is an initial pleading in this action and discovery has not yet commenced. No class has been certified. No expert discovery has commenced. The completion of fact and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class. Plaintiff therefore reserves her right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for Plaintiff and/or any certified class. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

# ECONOMIC INJURY

65.    Plaintiffs sought to buy Products that were lawfully labeled, marketed and sold.

66.    Plaintiffs saw and relied on Defendant's misleading labeling of its Products.

67.    Plaintiffs believed that the Products were 100% Natural.

68.    Plaintiffs believed that the Products were lawfully marketed and sold.

69.    In reliance on the claims made by Defendant regarding the qualities of its Products, Plaintiffs paid a price premium.

70.    As a result of their reliance on Defendant's misrepresentations, Plaintiffs received Products that lacked the promised ingredients which they reasonably believed they contained.

71.    Plaintiffs received Products that were unlawfully marketed and sold.

72.    Plaintiffs lost money and thereby suffered injury as they would not have purchased these Seltzers and/or paid as much for them absent the misrepresentation.

73.    Defendant knows that clean label claims such as "100% Natural" are material to a consumer's purchasing decision.

74.    Plaintiffs altered their positions to their detriment and suffered damages in an amount equal to the amounts they paid for the Seltzers they purchased, and/or in additional amounts attributable to the deception.

75.    By engaging in the false and deceptive conduct alleged herein Defendant reaped, and continues to reap financial benefits in the form of sales and profits from its Products.

76.    Plaintiffs, however, would be willing to purchase Defendant's Seltzers again in the future should they be able to rely on Defendant's marketing as truthful and non-deceptive.

## **CLASS ACTION ALLEGATIONS**

77.    Plaintiffs bring this action on behalf of themselves and on behalf of classes of all others similarly situated consumers defined as follows:

a.    **National**: All persons in the United States who purchased Class Products in the United States during the Class Period.

b.    **California:** All persons in California who purchased the Class Products in California during the Class Period.

c.    **New York:** All persons in New York who purchased the Class Products in New York during the Class Period.

d.    **Class Period** is the maximum time allowable as determined by the statute of limitation periods accompanying each cause of action.[16]

78.    Plaintiffs bring this Class pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3) and 23(c)(4).

79.    Excluded from the Class are: (i) Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned.

---

[16] The statute of limitations for Plaintiffs' claims under California Civil Code § 1750, et seq., N.Y. Gen. Bus U. Law § 349 et seq.,  N.Y. Gen. Bus. Law § 350 et seq., and for unjust enrichment is 3 years. Accordingly for these claims the Class Period begins 3 years from the date of the initial filing of the Complaint to the present. Plaintiffs' claims under California's Business and Professions Code § 17200, et. seq., California's Business & Professions Code § l7500, et. seq., and for breach of express warranty have a statute of limitations of 4 years. Accordingly the Class Period for these claims begins 4 years from the date of initial filing to the present.

80.    Upon information and belief, there are tens of thousands of members of the Class. Therefore, individual joinder of all members of the Class would be impracticable.

81.    There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

82.    Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include but are not limited to:

a.    Whether Defendant marketed, packaged, or sold the Class Products to Plaintiff and those similarly situated using false, misleading, or deceptive statements or representations;

b.    Whether Defendant omitted or misrepresented material facts in connection with the sales of its Products;

c.    Whether Defendant participated in and pursued the common course of conduct complained of herein;

d.    Whether Defendant has been unjustly enriched as a result of its unlawful business practices;

e.    Whether Defendant's actions violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq*. (the "UCL");

f.    Whether Defendant's actions violate the False Advertising Law, Cal. Bus. & Prof. Code §§17500, *et seq*. (the "FAL");

g.    Whether Defendant's actions violate the Consumers Legal Remedies Act, Cal. Civ. Code §§1750, *et seq*.

(the "CLRA");

    h.   Whether Defendant's actions violate N.Y. Gen. Bus. Law § 349 et seq;

    i.   Whether Defendant's actions violate N.Y. Gen. Bus. Law § 350 et seq;

    j.   Whether Defendant should be enjoined from continuing the above-described practices;

    k.   Whether Plaintiffs and members of the Class are entitled to declaratory relief; and

    l.   Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

83.    Plaintiffs' claims are typical of the claims of the Class, in that Plaintiffs were  consumers who purchased Defendant's Products. Plaintiffs are no different in any relevant respect from any other Class member who purchased the Products, and the relief sought is common to the Class.

84.    Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent, and they have retained counsel competent and experienced in conducting complex class action litigation. Plaintiffs and their counsel will adequately protect the interests of the Class.

85.    A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member likely will be relatively small, especially given the relatively small cost of the Products at issue and the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's conduct. Thus, it would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Moreover, even if members of the

Class could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

86.    In the alternative, the Class may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to each Class.

87.    The requirements for maintaining a class action pursuant to Rule 23(b)(2) are also met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION
### (Breach of Express Warranty)

88.    Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

89.    Plaintiffs' express warranty claims are based on violations of N.Y. CLS UCC § 2-313 and § 2-607 and Cal. Com. Code §2313. Defendant was afforded reasonable notice of this claim in advance of the filing of this complaint.

90.    Defendant made express warranties to Plaintiffs and members of the Class that the Products they purchased were "100% Natural."

91.    The express warranties made to Plaintiffs and members of the Class appear on every Product label. This warranty regarding the nature of the Product marketed by Defendant specifically relates to the goods being purchased and became the basis of the bargain.

92.    Plaintiffs and the Class purchased the Products in the belief that they conformed to the express warranties that were made on the Products' labels.

93.    Defendant breached the express warranties made to Plaintiffs and members of the Class by failing to supply goods that conformed to the warranties it made. As a result, Plaintiffs and members of the Class suffered injury and deserve to be compensated for the damages they suffered.

94.    Plaintiffs and the members of the Class paid money for the Products. However, Plaintiffs and the members of the Class did not obtain the full value of the advertised Products. If Plaintiffs and other members of the Class had known of the true nature of the Products, they would not have purchased them or paid less for them. Accordingly, Plaintiffs and members of the Class have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

95.    Plaintiffs and the Class are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

## SECOND CAUSE OF ACTION
### ("Unlawful" Business Practices in Violation of
### The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§17200, *et seq*.)
### By Plaintiff Gradney on Behalf of the California Subclass

96.    Plaintiff Gradney incorporates each and every allegation contained in the paragraphs above as if restated herein.

97.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

98.    A business act or practice is "unlawful" if it violates any established state or federal law.

99.    Defendant's acts, omissions, misrepresentations, practices, and/or non-disclosures concerning the Products alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§301, et seq. and its implementing regulations, including, at least, the following sections:

a.    21 U.S.C. §343(a), which deems food misbranded when its labeling contains a statement that is false or misleading in any particular;

b.    21 U.S.C. §§331and 333, which prohibits the introduction of misbranded foods into interstate commerce.

100.    California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code §109875 *et seq.*, broadly prohibits the misbranding of food. Cal. Health & Safety Code §110765; *See, also* Cal. Health & Safety Code §110660 ("Any food is misbranded if its labeling is false or misleading in any particular."). The Sherman Law incorporates all food labeling regulations and any amendments to those regulations adopted pursuant to the Food, Drug, and Cosmetic Act of 1938  as the food labeling regulations of California. Cal. Health & Safety Code §§110100(a), 110665, 110670.

101.    As described in detail above, by failing to label the Products in a manner that accurately represents its contents, Defendant generally violates 21 U.S.C. §343(a)(1) ("a food shall be deemed to be misbranded if its labeling is false or misleading in any particular") as incorporated by California's Sherman Law. Independently, by mislabeling the Products, Defendant violates Cal. Health & Safety Code § 110660 ("any food is misbranded if its labeling is false or misleading in any particular.")

102.    Defendant violated and continues to violate the Sherman Law, Article 6, Section 110660 and hence has also violated and continues to violate the "unlawful" prong of the UCL through the false labeling of its Product.

103.   Defendant's identical conduct that violates the Sherman Law, also violates FDCA §403(a)(1), 21 U.S.C. §343(a)(1), which declares food misbranded under federal law if its "labeling is false and misleading in any particular." This identical conduct serves as the sole factual basis of each cause of action brought by this Complaint, and Plaintiff does not seek to enforce any of the state law claims to impose any standard of conduct that exceeds that which would violate FDCA.

104.   By committing the unlawful acts and practices alleged above, Defendant has engaged, and continues to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§17200, *et seq.*

105.   In accordance with California Business & Professions Code Section 17203, and as Plaintiff lacks an adequate remedy at law, she seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

106.   Through its unlawful acts and practices, Defendant has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an order is not granted.

**THIRD CAUSE OF ACTION**
**("Unfair" Business Practices in Violation of**

### The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)
### By Plaintiff Gradney on Behalf of the California Subclass

107. Plaintiff Gradney incorporates each and every allegation contained in the paragraphs above as if restated herein.

108. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

109. A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

110. Defendant has violated, and continues to violate, the "unfair" prong of the UCL through its misleading description of the Products. The gravity of the harm to members of the Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications, or motives of Defendant for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Defendant engaged, and continues to engage, in unfair business practices within the meaning of California Business and Professions Code §§17200, *et seq.*

111. In accordance with California Business & Professions Code Section 17203, and as Plaintiff lacks an adequate remedy at law, they seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

112. Through its unfair acts and practices, Defendant obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff has been injured and requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, to disgorge the profits

Defendant made on its Products, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

### FOURTH CAUSE OF ACTION
**("Fraudulent" Business Practices in Violation of**
**The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et***
***seq*.)**
**By Plaintiff Gradney on Behalf of the California Subclass**

113.    Plaintiff Gradney incorporates each and every allegation contained in the paragraphs above as if restated herein.

114.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

115.    A business act or practice is "fraudulent" under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

116.    Defendant's acts and practices of mislabeling its Products in a manner to suggest they principally contained their characterizing ingredients.

117.    As a result of the conduct described above, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Defendant has been unjustly enriched by the profits they have obtained from Plaintiff and the Class from the purchases of their Products.

118.    In accordance with California Business & Professions Code Section 17203, and as Plaintiff lacks an adequate remedy at law, they seek an order enjoining Defendant from continuing to conduct business through

unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

119.    Through its fraudulent acts and practices, Defendant has improperly obtained, and continues to improperly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the Class, to disgorge the profits Defendant has made, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

### FIFTH CAUSE OF ACTION
**(False Advertising in Violation of**
**California Business & Professions Code §§ 17500, *et seq*.)**
**By Plaintiff Gradney on Behalf of the California Subclass**

120.    Plaintiff Gradney incorporates each and every allegation contained in the paragraphs above as if restated herein.

121.    Defendant uses advertising and packaging to sell its Products. Defendant disseminates advertising regarding its Products which by its very nature is deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§17500, *et seq.* because those advertising statements contained on the labels are misleading and likely to deceive, and continue to deceive, members of the putative Class and the general public.

122.    In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§17500, *et seq.*

123.   The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§17500, *et seq*.

124.   Through its deceptive acts and practices, Defendant has improperly and illegally obtained money from Plaintiff and the members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, and to enjoin Defendant from continuing to violate California Business & Professions Code §§17500, *et seq.*, as discussed above. Otherwise, Plaintiff and those similarly situated will continue to be harmed by Defendant's false and/or misleading advertising.

125.   Pursuant to California Business & Professions Code §17535, Plaintiff seeks an Order of this Court ordering Defendant to fully disclose the true nature of its misrepresentations. Plaintiff additionally requests an Order: (1) requiring Defendant to disgorge its ill-gotten gains, (2) award full restitution of all monies wrongfully acquired by Defendant and (3), interest and attorneys' fees. Plaintiff and the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## SIXTH CAUSE OF ACTION
**(Violation of the Consumers Legal Remedies Act,
California Civil Code §§ 1750, *et seq*.)
By Plaintiff Gradney on Behalf of the California Subclass**

126.   Plaintiff Gradney incorporates each and every allegation contained in the paragraphs above as if restated herein.

127.   This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§1750, *et seq*. (the "CLRA").

128.   Plaintiff and each member of the proposed Class are "consumers" within the meaning of Civil Code §1761(d).

129.   The purchases of the Products by consumers constitute "transactions" within the meaning of Civil Code §1761(e) and the Products constitute "goods" within the meaning of Civil Code §1761(a).

130.   Defendant has violated, and continues to violate, the CLRA in at least the following respects:

      a.   §1770(5) pertaining to misrepresentations regarding the characteristics of goods sold—specifying that misleading representations regarding ingredients violate the CLRA;

      b.   §1770(7) pertaining to misrepresentations regarding the standard, quality, or grade of goods sold; and

      c.   § 1770(9) pertaining to goods advertised with the intent not to provide what is advertised.

131.   Defendant knew, or should have known, that the labeling of their Products violated consumer protection laws, and that these statements would be relied upon by Plaintiff and the members of the Class.

132.   The representations were made to Plaintiff and all members of the Class. Plaintiff relied on the accuracy of the representations on Defendant's packaging labels which formed a material basis for his decision to purchase the Products. Moreover, based on the very materiality of Defendant's misrepresentations uniformly made on or omitted from their Product labels, reliance may be presumed or inferred for all members of the Class.

133.   Defendant carried out the scheme set forth in this Complaint willfully, wantonly, and with reckless disregard for the interests of Plaintiff and the Class, and as a result, Plaintiff and the Class have suffered an ascertainable loss of money or property.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

134.    Plaintiff and the members of the Class request that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code §1780(a)(2). Unless Defendant is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Defendant's Products will be damaged by their acts and practices in the same way as have Plaintiff and the members of the proposed Class.

135.    In conjunction with this lawsuit Plaintiff served a CLRA demand pursuant to Civil Code §1782, via U.S. Certified Mail Return Receipt notifying Defendant of the conduct described herein and that such conduct was in violation of particular provisions of Civil Code §1770. If 30 days pass without Defendant providing the requested class-wide relief, Plaintiff will amend the Complaint to seek damages as provided under Civil Code §1780.

## SEVENTH CAUSE OF ACTION

**(Violation of New York's Consumer Protection from Deceptive Acts and Practices Law N.Y. GEN. BUS. LAW § 349 *et seq.*)**
**By Plaintiff Toll on behalf of the New York Subclass**

136.    Plaintiff Toll incorporates each and every allegation contained in the paragraphs above as if restated herein. Plaintiff Toll brings this claim on behalf of the New York Subclass for violation of section 349 of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 349 *et seq.*

137.    Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]." N.Y. Gen. Bus. Law § 349(a).

138.    Polar's labeling and marketing of the Beverages, as alleged herein, constitute "deceptive" acts and practices, as such conduct misled

Plaintiff Toll  and the New York Subclass as to the characteristics and value of the Products.

139.   Subsection (h) of Section 349 grants private plaintiffs a right of action for violation of New York's Consumer Protection from Deceptive Acts and Practices Law, as follows:

> In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

N.Y. Gen. Bus. Law § 349(h).

140.  In accordance with subsection (h) of Section 349, Plaintiff Toll seeks an order enjoining Polar from continuing the unlawful deceptive acts and practices set out above. Absent a Court order enjoining the unlawful deceptive acts and practices, Polar will continue its deceptive and misleading marketing campaign and, in doing so, irreparably harm each of the New York Subclass members. As a consequence of Polar's deceptive acts and practices, Plaintiff Toll and other members of the New York Subclass suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiff Toll and other members of the New York Subclass also seek actual damages or statutory damages of $50 per violation, whichever is greater, as well as punitive damages. N.Y. GEN. BUS. LAW § 349(h).

## EIGTH CAUSE OF ACTION

**(Violation of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 350 *et seq.*)**
**By Plaintiff Toll on Behalf of the New York Subclass**

141.   Plaintiff Toll incorporates each and every allegation contained in the paragraphs above as if restated herein. Plaintiff Toll brings this claim on behalf of the New York Subclass for violation of section 350 of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. Gen. Bus. Law § 350.

142.   Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]." N.Y. Gen. Bus. Law § 350.

143.   New York General Business Law Section 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect." N.Y. Gen. Bus. Law § 350-a.1. The section also provides that advertising can be false by omission, as it further defines "false advertising" to include "advertising [that] fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates." *Id.*

144.   Polar's labeling, marketing, and advertising of its Seltzers, as alleged herein, are "misleading in a material respect" and, thus, constitute "false advertising," as they falsely represent the Products as consisting of characteristics and lawfulness that they do not possess.

145.   Plaintiff Toll seeks an order enjoining Polar from continuing this false advertising. Absent enjoining this false advertising, Polar will continue to mislead Plaintiff Toll and the other members of the New York Subclass as to the characteristics of their Products, and in doing so, irreparably harm each of the New York Subclass members.

146.   As a direct and proximate result of Polar's violation of New York General Business Law §350, Plaintiff Toll and the other members of the New York Subclass have also suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiff Toll and other members of the New York Subclass also seek actual damages or statutory damages of $500 per violation, whichever is greater, as well as punitive damages. N.Y. GEN. BUS. LAW § 350-e.

### NINTH CAUSE OF ACTION
**(Restitution Based On Quasi-Contract/Unjust Enrichment)**
**By Plaintiffs on Behalf of the Nationwide Class**

147.   Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

148.   Defendant's conduct in enticing Plaintiffs and the Class to purchase is Products with false and misleading packaging is unlawful because the statements contained on the Defendant's Product labels are untrue.

149.   Defendant took monies from Plaintiffs and the Class for these Products and have been unjustly enriched at the expense of Plaintiffs and the Class as result of their unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiffs and the Class.

150.   It is against equity and good conscience to permit Defendant to retain the ill-gotten benefits received from Plaintiffs and Class members.

151.   As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

# **PRAYER FOR RELIEF**

THEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the Class and for the Counts so applicable on behalf of the general public request an award and relief as follows:

A.     An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiffs be appointed Class Representatives, and Plaintiffs' counsel be appointed Lead Counsel for the Class.

B.     Restitution in such amount that Plaintiff and all members of the Class paid to purchase Defendant's Product or restitutionary disgorgement of the profits Defendant obtained from those transactions, for Causes of Action for which they are available.

C.     Compensatory damages for Causes of Action for which they are available.

D.     Other statutory penalties for Causes of Action for which they are available.

E.     Punitive Damages for Causes of Action for which they are available.

F.     A declaration and Order enjoining Defendant from marketing and labeling its Product deceptively, in violation of laws and regulations as specified in this Complaint.

G.     An Order awarding Plaintiffs their costs of suit, including reasonable attorneys' fees and pre and post judgment interest.

H.     An Order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendant as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein.

I.     Such other and further relief as may be deemed necessary or appropriate.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all causes of action or issues so triable.

DATED: March 2, 2025          Respectfully submitted,

Michael D. Braun
**KUZYK LAW, LLP**
1999 Avenue of the Stars, Ste. 1100
Los Angeles, California 90067
Telephone:  (213) 401-4100
Facsimile:   (213) 401-0311
Email:  mdb@kuzykclassactions.com

*Counsel for Plaintiffs*