UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACY GRADNEY, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>POLAR BEVERAGES,<br><br>        Defendant. | Case No.  25-cv-02149-EMC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>Docket No. 52 |

Plaintiffs Stacy Gradney and Sharon Toll have filed suit against Defendant Polar Beverages.  They allege that Polar has breached its warranty and violated consumer protection law (New York and California) by labeling certain flavors of its seltzer water as "100% Natural" even though those flavors contain synthetic ingredients.  Previously, the Court granted Polar's motion to dismiss the original complaint as well as its motion to dismiss the first amended complaint ("FAC"), but each time it gave Plaintiffs leave to amend.  Plaintiffs have now filed a second amended complaint ("SAC"), supported by an expert declaration, and Polar moves to dismiss this pleading as well.

Having considered the parties' briefs as well as the oral argument of counsel, the Court hereby **DENIES** Polar's motion to dismiss.

Plaintiffs have filled the "gaps" identified by the Court in its prior order.

- First, Plaintiffs have made sufficient allegations that a petrochemical is not naturally occurring.  *See, e.g.*, SAC ¶¶ 63, 70; Supp. Keranen Decl. ¶ 7.  Plaintiffs have also fairly noted in their brief that federal regulations recognize most of the ingredients at issue can come in synthetic form.  *See* 21 C.F.R. § 172.515 (stating

that "[s]ynthetic flavoring substances and adjuvants may be safely used in food in accordance with the following conditions" and that one of the conditions is that they "consist of one or more of the following": *e.g.*, octanal, α-terpineol, isoamyl acetate, ethyl 2-methylbutyrate, and 1,4-cineole); *id.* § 182.60 (stating that "[s]ynthetic flavoring substances and adjuvants that are generally recognized as safe for their intended use, within the meaning of section 409 of the Act, are as follows": *e.g.*, ethyl butyrate, linalool, α-terpineol, and ethyl acetate).

- Second, Plaintiffs have made more robust allegations about radiocarbon testing, including allegations that radiocarbon testing is commonly used to differentiate between natural and synthetic ingredients. *See, e.g.*, SAC ¶ 57 (alleging that radiocarbon testing "is one of the most definitive analytical methods for distinguishing" between the two); SAC ¶ 61 (alleging that "'[m]arket-leading companies have included biobased carbon to substantiate their "natural" claims'"); SAC ¶¶ 65-67 (citing websites of companies that conduct testing and an article from the Journal of Agricultural and Food Chemistry). Plaintiffs also provided a more robust explanation of how radiocarbon testing can reveal synthetic ingredients. *See* Supp. Keranen Decl. ¶¶ 4-5 (addressing why radiocarbon testing can be used to distinguish natural ingredients and synthetic ingredients).

To the extent Polar argues now that Plaintiffs have a fundamentally flawed theory as to what makes an ingredient artificial, the Court does not agree. Plaintiffs have taken the position that an ingredient is artificial if (in essence) it is derived from a petrochemical rather than a natural source. Polar contends that, if the synthetic and natural versions do not differ in chemical structures or molecular formulas, then no reasonable consumer would deem the synthetic version unnatural. *See* Mot. at 16 (arguing that a reasonable consumer would not "actually hold such a severe and pedantic definition of 'natural' as to exclude chemicals identical to those found in nature"). But it is question of fact – at least at this stage of the pleadings where all allegations of the complaint are taken as true and all reasonable inferences are drawn in Plaintiffs' favor – as to whether a reasonable consumer would find the "100% Natural" label false or misleading if the

United States District Court
Northern District of California

product bearing the label contains an ingredient derived from a synthetic source. *Cf. Jones v. Reed's, Inc.*, No. 25-cv-07102-JCS, 2026 U.S. Dist. LEXIS 46033, at \*26 (N.D. Cal. Mar. 5, 2025) ("Plaintiff has plausibly alleged the malic acid used in the Products is synthetic, . . . because, among other things, the starting material from which it is made is petroleum-derived fumaric acid."). And Plaintiffs have, in their pleading, addressed why a reasonable consumer might care: because the "100% Natural" label plays on the "clean" movement promoting "clean" products. That this issue might be re-examined in the context of, *e.g.*, a motion for summary judgment does not warrant dismissal at this juncture.

Polar's final argument is that Plaintiffs' failure to narrow which of the 10-11 ingredients at issue is actually synthetic violates Rule 9(b). This is essentially a rehash of an argument the Court already rejected. *See* Docket No. 46 (Order at 5) (noting that one of the justifications for Rule 9(b) is fair notice; citing *Silingo*, where the Ninth Circuit stated that "allegations of fraud 'must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge'"). The Court rejects the argument again here. To be sure, Polar's concern that defending 10-11 ingredients could impose a burden is not without any basis. Nevertheless, the Court is not persuaded based on the record before it. Ten to eleven ingredients constitute a relatively small finite set, and the information about the ingredients is within the possession, custody, or control of Polar. If early discovery coupled with meeting and conferring does not further narrow the number of ingredients, then the Court may be willing to entertain an early summary judgment motion from Polar.

Accordingly, the Court denies Polar's motion to dismiss. An initial case management conference is set for July 14, 2026, at 1:30 p.m.

This order disposes of Docket No. 52.

**IT IS SO ORDERED**.

Dated: June 12, 2026

_____
EDWARD M. CHEN
United States District Judge